UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANK ANTHONY BAUSS,

      Plaintiff,                    CIVIL ACTION NO. 14-cv-12180

      v.                             DISTRICT JUDGE DAVID M. LAWSON

MICHAEL WILDT and             MAGISTRATE JUDGE MONA K. MAJZOUB
CHIP SNIDER,

      Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action filed by Plaintiff Frank Anthony Bauss pursuant to 42 U.S.C. § 1983. Before the Court is Defendants Michael Wildt and Chip Snider's Motion for Summary Judgment. (Docket no. 12.) Plaintiff filed a Brief in Opposition to Defendants' Motion for Summary Judgment (docket no. 16), to which Defendants replied (docket no. 17). This action has been referred to the undersigned for all pretrial proceedings. (Docket no. 4.) The Court has reviewed the pleadings, dispenses with oral argument on the motion pursuant to Eastern District of Michigan Local Rule 7.1(f), and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

I.    RECOMMENDATION

For the reasons that follow, it is recommended that Defendants' Motion for Summary Judgment (docket no. 12) be **GRANTED** and that Defendants' additional request for an award of costs and attorney's fees be **DENIED**.[1]

---

[1] Defendants have not set forth a sufficient basis to award costs and fees against Plaintiff, and the Court finds none.

## II.     REPORT

### A.     Background

This matter arises from the arrest and prosecution of Plaintiff on a disorderly conduct charge, which was based on Plaintiff's October 6, 2011 visit to the Northville Township Hall. (*See* docket no. 1-1; docket no. 12 at 6.)  Events relevant to this matter also occurred before October 6, 2011.  According to Plaintiff, sometime before October 6, 2011, Plaintiff attended a Township Board Meeting, at which he urged the citizens present at the meeting to vote "no" on a proposed Special Assessment District, a position contrary to that of Defendant Snider, the Township Manager for Northville Township.  (Docket no. 1-1 ¶¶ 8-9; docket no. 12 at 10-11.) Plaintiff alleges that Defendant Snider ordered Plaintiff to address his remarks to the public officials present at the meeting instead of the citizens present, but Plaintiff refused to do so. (Docket no. 1-1 ¶ 10.)  After a vote on the Special Assessment District took place, Plaintiff asserts that he was waiting for the results to be tallied at the Township Clerk's office when Defendant Snider approached Plaintiff, told Plaintiff that "[Plaintiff didn't] know who [he was] messing with," and ordered Plaintiff to leave, after which Plaintiff and Defendant Snider "had words."  (*Id*. ¶ 11.)  Plaintiff also asserts that Defendant Snider contacted the local newspaper and called Plaintiff a "bully" in a published story regarding the Board Meeting.  (*Id*. ¶ 13.)

At some point after the events surrounding the Board Meeting, Northville Township cited Plaintiff for an ordinance violation regarding the condition of Plaintiff's property.  (Docket no. 1-1 ¶ 12; docket no. 12 at 6.)  Plaintiff alleges that he and Defendant Snider exchanged words during the trial on the ordinance violation and that Defendant Snider reported to the police that Plaintiff had threatened him in the courthouse, after which a criminal investigation was conducted, but no charges were brought.  (Docket no. 1-1 ¶ 12.)  According to Defendants,

Plaintiff was ultimately found responsible for the ordinance violation, he was ordered to clean up the property, and he complied with the court order. (Docket no. 12 at 6.) Defendants further inform that Plaintiff believed that the Township was under a duty to issue a letter of compliance to the court once Plaintiff complied with the court order. (*Id*.) Defendants explain that, to that end, Plaintiff visited the Northville Township Hall on October 5, 2011 to review the file associated with his property, and he spoke with a female employee, who told him that the file was unavailable but that it would be made available to him if he came back the next day. (*Id*. at 6-7.)

Plaintiff returned to the Northville Township Hall the next day, October 6, 2011, and asked a female employee to review the property file. (Docket no. 1-1 ¶ 14; docket no. 12 at 7.) The employee, who was not the same person that assisted Plaintiff the day prior, instructed Plaintiff to fill out a Freedom of Information Act (FOIA) form as a prerequisite to viewing the file. (Docket no. 12 at 7.) According to Defendants, at this point Plaintiff "became irate and abusive with the woman, slamming his fist on the counter and berating her for requiring him to fill out a form to see the file." (*Id*.) Defendants allege that Plaintiff was so loud that he could be heard by others located approximately fifty feet from the counter at which Plaintiff was standing, which drew the attention of two male employees to the counter and alarmed a female employee in another department to the point that she pushed the "panic button," summoning the police to the Township Hall. (*Id*. at 7-8.) Defendants also allege that Plaintiff gave one of the male employees the "finger," remained agitated and loud, and claimed that he was being "jerked around," accompanying this claim by making a "back and forth thrusting masturbatory motion with his right hand." (*Id*. at 8.) Defendants explain that Plaintiff was no longer acting out when the police arrived, but the officers stood by to make sure that there was no further incident. (*Id*.)

3

According to the police report, after Plaintiff left the Township Hall, as he was driving out of the parking lot, he "displayed his middle finger to [the officer] in a very prominent and aggressive manner, multiple times." (Docket no. 12 at 8-9; docket no. 12-4 at 7.)

Defendants explain that the Director of Public Safety of Northville Township assigned the investigation of this incident to Defendant Lieutenant Wildt, who conducted witness interviews, collected witness statements, and turned the results of the investigation over to the Township Prosecutor, Gregory Demopoulos. (Docket no. 12 at 9.) Prosecutor Demopoulos reviewed the materials and found probable cause to issue an arrest warrant for Plaintiff. (*Id*. at 9; docket no. 12-12 ¶¶ 5-6.) According to both parties, however, the October 6, 2011 incident was captured on video, and that video was not included with the initial investigatory materials submitted to Prosecutor Demopoulos by Defendant Wildt, although it was turned over to Prosecutor Demopoulos and defense counsel in advance of trial. (Docket no. 1-1 at ¶¶ 17, 25; docket no. 12 at 9-10.) Once the arrest warrant was authorized, the parties recount a non-material difference of events; Plaintiff asserts that he was arrested, and Defendants assert that Plaintiff was permitted to turn himself in. (Docket no. 1-1 ¶ 19; docket no. 12 at 10.) Plaintiff was then fingerprinted, photographed, transported in handcuffs to the 35th District Court for his arraignment, and subsequently released. (*Id*.) Plaintiff was found not guilty of the disorderly conduct ordinance violation following a jury trial. (Docket no. 1-1 ¶ 21.)

In April 2014, Plaintiff filed the instant Complaint in the Wayne County Circuit Court, in which he sets forth two claims against Defendants: Count I – "Violation of 28 USC Section 1983" and Count II – "Malicious Prosecution." (Docket no. 1-1.) Defendants removed the action to this Court on June 3, 2014. (Docket no. 1.) Plaintiff seeks compensatory and punitive damages in excess of $25,000.00. (Docket no. 1-1 at 8, 9.)

### B. Governing Law

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docket no. 12.)  Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000).  Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915.  A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most

5

favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

**C.     Analysis**

*1.     Plaintiff's Section 1983 Claim*

To prevail on a Section 1983 claim, a plaintiff must prove "that (1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001) (citations omitted). There is no dispute that Defendants were persons acting under color of state law. Thus, the only remaining issue under a Section 1983 analysis is whether Defendants deprived Plaintiff of a constitutional right. The sole constitutional violation set forth by Plaintiff in his Complaint, albeit obscure, is that Defendant Wildt, "[i]n presenting his investigation seeking the institution of a criminal charge against [P]laintiff, . . . deliberately and intentionally failed to present the DVD recording of the incident, creating a false impression of [P]laintiff's conduct[,] which resulted in the institution of a criminal case against [P]laintiff and the issuance of an arrest warrant against [P]laintiff." (Docket no. 1-1 ¶ 25.) Essentially, Plaintiff asserts Fourth Amendment violations of false arrest and malicious prosecution against Defendant Wildt. Plaintiff does not allege a constitutional violation against Defendant Snider.

Though the torts of false arrest and malicious prosecution are distinct causes of action under the Fourth Amendment, the legal standards that a plaintiff must prove to succeed on a claim of false arrest or malicious prosecution are similar, particularly with regard to the instant matter. "A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005) (citations omitted). "An arrest pursuant to a facially valid warrant

6

is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to § 1983." *Id*. (footnote and citation omitted). The exception to this defense lies where the plaintiff proves by a preponderance of the evidence that the officer, in order to procure the warrant, "'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood' and 'such statements or omissions [we]re material, or necessary, to the finding of probable cause.'" *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Wilson v. Russo,* 212 F.3d 781, 786–87 (3d Cir. 2000)).

To prevail on a Section 1983 malicious prosecution claim, a plaintiff must show that (1) "a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute;" (2) "there was a lack of probable cause for the criminal prosecution;" (3) the plaintiff suffered a deprivation of liberty as a result of the criminal prosecution; and (4) the criminal prosecution was resolved in the plaintiff's favor. *Sykes*, 625 F.3d at 308-09 (citations and internal quotation marks omitted). "Whether an officer influenced or participated in the decision to prosecute hinges on the degree of the officer's involvement and the nature of the officer's actions." *Id*. at 311 n.9 (citations omitted). "[A]n officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's truthful materials." *Id*. at 314 (emphasis and citations omitted). But where the claim is that the officer's investigatory materials were somehow untruthful, the proper inquiry is whether the officer's falsehoods, misrepresentations, or omissions, which clearly resulted in the plaintiff's arrest, "can survive a number of intervening decisions by others such that [the officer] can still be said to have influenced or participated in the decision to institute criminal proceedings. *Id*.

As an initial matter, Plaintiff has failed to show that there was a lack of probable cause for his arrest or the subsequent criminal prosecution. "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion," and it should be determined by examining a totality of the circumstances. *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (internal quotation omitted); *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Here, Northville Township ordinance § 67-6, titled "Violent acts, vulgar language and disturbance of the peace," under which Plaintiff was prosecuted provides:

> It shall be unlawful for any person to act in a violent, boisterous, turbulent, quarrelsome, indecent or disorderly manner, or to use profane, obscene or vulgar language, or to disturb the good order, peace and dignity of the Township, its inhabitants or other persons.

(Docket no. 12-13 at 2.) The investigatory materials that Defendant Wildt submitted to Prosecutor Demopoulos included the written statements of several witnesses to Plaintiff's behavior on October 6, 2011, and those statements consistently assert that Plaintiff yelled at a female employee, gave another employee "the finger," made a back and forth thrusting motion with his hand and said, "You're jerkin' me off," used foul language, and was acting very agitated and pacing back and forth in front of the counter. (*See* docket no. 12-4.) The statements also indicate that Plaintiff's behavior drove two female employees to call the police and/or press the panic button, and they inform that two policemen arrived on the scene, albeit after Plaintiff had calmed down, and remained on the scene until Plaintiff's departure. (*Id*.) These several statements, consistently describing Plaintiff's agitated behavior and use of obscene and vulgar language, both verbal and non-verbal, toward Township employees, were sufficient to give Prosecutor Demopoulos reasonable grounds to believe that Plaintiff violated the ordinance, and they support Prosecutor Demopoulos's finding of probable cause. *See Peet v. City of Detroit*,

8

502 F.3d 557, 564 (6th Cir. 2007) (trustworthy witness statement sufficient to establish probable cause).

Secondly, Plaintiff's constitutional claim is predicated on the allegation that Defendant Wildt intentionally withheld the video of the incident from the investigation materials that he submitted to Prosecutor Demopoulos, which "creat[ed] a false impression of [P]laintiff's conduct," and resulted in the issuance of the arrest warrant and the institution of the criminal case against Plaintiff. (Docket no. 1-1 ¶ 25.) But, beyond this conclusory allegation, Plaintiff has not shown by a preponderance of the evidence that Defendant Wildt knowingly and deliberately, or with a reckless disregard for the truth, omitted the video from the materials that he submitted to Prosecutor Demopoulos. Conversely, Defendant Wildt explains in the brief in support of the instant motion that he was unable to obtain the video by the time that he submitted his investigation materials to Prosecutor Demopoulos because he was waiting for a person with knowledge of the video system to copy it. (Docket no. 12 at 10.) Defendant Wildt also testified similarly in his deposition: when asked by Plaintiff, "When did you share the video with Prosecutor Demopoulos?," Defendant Wildt answered, "Some time after Elizabeth McCormick made copies of it. I delivered him a copy of the tape as well." (Docket no. 12-10 at 7.)

Moreover, Plaintiff has failed to show that the video was material to Prosecutor Demopoulos's probable cause finding. Plaintiff argues that the video is the only available objective evidence of the incident and that it is exculpatory in nature because it "shows no arm waiving, threatening gestures, strutting about, or other actions of a disturbed person disrupting the peace." (Docket no. 16 at 5.) Through this argument, Plaintiff seemingly implies that had Prosecutor Demopoulos reviewed the video as part of Defendant Wildt's initial submission of investigatory materials, he would not have found probable cause to proceed. An independent

9

review of the video, however, is neither wholly inculpatory nor exculpatory of the charges. In fact, some portions of the video corroborate the witnesses' statements, even in the absence of an audio recording, in that Plaintiff appeared to be very animated, both verbally and non-verbally, and that he made the masturbatory gestures as described. (*See* docket no. 12-7.) Plaintiff's argument also fails in light of Prosecutor Demopoulos's statements in an affidavit submitted as an exhibit to the instant motion. (Docket no. 12-12.) In the affidavit, Prosecutor Demopoulos affirms that he determined that there was probable cause to issue arrest warrants for Plaintiff based on the materials submitted to him by Defendant Wildt, which did not include the video, but included "a number of statements by credible witnesses which [he] believed showed Plaintiff's actions at the Township Hall violated the local disorderly person ordinance." (*Id.* ¶¶ 4-6.) Prosecutor Demopoulos also attested that early on in Plaintiff's prosecution, he reviewed the video in question as part of an ongoing review of his probable cause determination, and he did not believe that the video negated probable cause. (*Id*. ¶¶ 8, 10.) Plaintiff has not produced any evidence to negate probable cause, as is required to for him to avoid summary judgment in Defendants' favor.

Furthermore, Prosecutor Demopoulos's intervening and continuing finding of probable cause, which he made upon review of the video, defeats any argument by Plaintiff that Defendant Wildt could be said to have influenced or participated in the decision to institute or continue the criminal proceedings, as is required to succeed on a malicious prosecution claim. For the reasons stated, Plaintiff's Section 1983 false arrest and malicious prosecution claims fail as a matter of law. Defendants are therefore entitled to summary judgment on Count I of the Complaint and do not need qualified immunity. *See Marvin v. City of Taylor*, 509 F.3d 234, 244 (6th Cir. 2007).

### 2. *Plaintiff's State-Law Malicious Prosecution Claim*

In Count II of his Complaint, titled "Malicious Prosecution," Plaintiff claims that there was no probable cause for instituting or continuing the prosecution against him and that Defendants' primary purpose for doing so "was other than bringing an offender to justice." (Docket no. 1-1 ¶¶ 33-34.) With regard to Defendants' purpose, Plaintiff alleges that "Defendant W[ildt], as [P]laintiff is informed and believes, was acting at the behest of [D]efendant S[nider] who had a personal dislike for [P]laintiff. Defendant S[nider] had taken and demonstrated a personal interest in the prosecution of [P]laintiff." (*Id.* ¶ 32.) Plaintiff does not explicitly bring these claims under Michigan law; however, in light of Plaintiff's *pro se* status, and because Plaintiff's claims in this portion of his Complaint sound in malice, which is required to prove malicious prosecution in Michigan, but not under Section 1983, the Court will construe this claim as a malicious prosecution claim brought under Michigan law.

"Under Michigan law, in order to state a *prima facie* case of malicious prosecution, [Plaintiff] 'must prove: 1. Prior proceedings terminated in favor of the present plaintiff; 2. Absence of probable cause for those proceedings; 3. Malice, defined as a purpose other than that of securing the proper adjudication of the claim; and 4. A special injury that flows directly from the prior proceedings.'" *Moldowan v. City of Warren*, 578 F.3d 351, 390 (6th Cir. 2009) (quoting *Payton v. City of Detroit,* 536 N.W.2d 233, 242 (Mich. Ct. App. 1995) (citing *Young v. Motor City Apartments Ltd.,* 350 N.W.2d 790, 792 (Mich. Ct. App. 1984))).

Here, it is undisputed that a jury found Plaintiff not guilty of the ordinance violation. Nevertheless, even if Plaintiff could sufficiently prove malice and special injury, Plaintiff's state-law malicious prosecution claim fails for the same reasons as his Section 1983 claim, as there was probable cause to initiate the proceedings against Plaintiff. Accordingly, Plaintiff's

malicious prosecution claim fails under Michigan law, and summary judgment should be awarded in Defendants' favor.

### D. Conclusion

For the above-stated reasons, it is recommended that the court **GRANT** Defendants' Motion for Summary Judgment (docket no. 12) and **DENY** Defendants' additional request for an award of costs and attorney's fees.

## III. NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must

specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: August 3, 2016           s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and counsel of record on this date.

Dated: August 3, 2016           s/ Lisa C. Bartlett
                                Case Manager